**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

<u>United States of America</u>

     v.                             Case No. 18-cr-98-01-PB
                                          Opinion No. 2021 DNH 050

<u>Joseph A. Foistner</u>

**<u>MEMORANDUM AND ORDER</u>**

Joseph Foistner was charged in an eleven-count superseding indictment with bank fraud, wire fraud, and other crimes arising out of a series of loan applications. Foistner seeks dismissal of the indictment in its entirety on the grounds of prosecutorial misconduct before the grand jury and vindictive prosecution. He also argues that the indictment is defective with respect to the bank fraud charges. The government objects. For the following reasons, I deny Foistner's motion.

## I.   <u>BACKGROUND</u>

### A.   <u>Superseding Indictment</u>

Foistner was an attorney licensed in Massachusetts who owned and managed "The Law Office of Joseph A. Foistner, Esquire & Associates, P.C." from 2001 until 2017. He was first indicted in June 2018. A grand jury issued a superseding indictment in October 2018, charging Foistner with eleven counts in connection with a series of loans he obtained, or sought to obtain, from

various lenders between 2015 and 2017, as well as subsequent
false statements he made in his Chapter 7 bankruptcy
proceedings.[1]  Foistner is alleged to have defrauded, or
attempted to defraud, four financial institutions into lending
him or his law office millions of dollars by providing false and
fraudulent information about his law office's income, his
personal income, and his personal finances.[2]  He also allegedly
defrauded another bank to loan his wife almost $400,000 by
misrepresenting his wife's personal income and finances.  In the
course of his subsequent bankruptcy proceedings, Foistner
allegedly failed to disclose that the proceeds of one of the
loans were in a bank account that he controlled.  He is also
alleged to have made false statements under oath about the use
of those proceeds as the down payment on the purchase of real
property and about his connection to that property.  See
Superseding Indictment, Doc. No. 17.

       The government's theory is that the false information
Foistner provided in connection with the loan applications
caused the lenders to believe that his law office was a

---

[1] Specifically, Foistner is charged with six counts of bank
fraud, one count of wire fraud, one count of money laundering,
one count of making a false bankruptcy declaration, and two
counts of making a false bankruptcy oath.

[2]  Three banks loaned to Foistner or his law office a total of
$3.3 million.  One loan he sought on behalf of his law office,
in the amount of $4.5 million, did not close.

lucrative, cash-producing business that would allow him to make monthly payments on the loans.  In reality, the government argues, the only clients of his law office were business entities that Foistner himself controlled, which never paid him money for his legal work.  Instead, he invoiced his entities for legal work and then treated those notes receivable as "accrued income" when preparing his federal income tax returns.  The government takes no position on the propriety of this accounting method for tax reporting purposes, but it argues that Foistner realized virtually no income from his law practice, contrary to what he led his lenders to believe.

## B.  **Foistner's Allegations**

Foistner maintains that he is a victim of a multi-decade conspiracy involving, among others, his former business partner Antonia Shelzi, his former attorney James Laboe, Assistant U.S. Trustee ("AUST") Geraldine Karonis, Chapter 7 Trustees Stephen Notinger, Deborah Notinger, and Victor Dahar, and New Hampshire Superior Court Judge David Ruoff.  Foistner alleges that some of those conspirators "hired" now-retired Assistant U.S. Attorney ("AUSA") Robert Kinsella to bring charges against Foistner in this case to eliminate their financial exposures resulting from ongoing civil litigation initiated by Foistner.  For purposes of this motion, it suffices to give a brief overview of the alleged conspiracy.

3

Foistner was a real estate developer who started a development project in 1985 in New Boston, New Hampshire, called Waldorf Estates.  Since then, Foistner or his business entities have been involved in over twenty lawsuits that directly or indirectly concerned Waldorf Estates.  Foistner contends that Attorney Laboe's law firm, Orr & Reno, P.A., represented Foistner and his partner Shelzi in some of those lawsuits between 1995 and 2005.  Shelzi was eventually forced out of the business venture, allegedly on account of criminal activity. Laboe subsequently represented Shelzi in lawsuits where Foistner or one of his entities was an adverse party.  In those lawsuits, several state judges, including Judge Ruoff, rejected Foistner's argument that Attorney Laboe had a conflict of interest and should be disqualified from representing Shelzi because Orr & Reno had previously represented Foistner.  Foistner claimed that Judge Ruoff conspired with Laboe, so he filed judicial misconduct and criminal complaints against him, to no avail.

Meanwhile, in 1999, one of the business entities controlled by Foistner, JFL Enterprises, filed for bankruptcy protection. Foistner alleges that the Notingers, who served as Chapter 7 trustees under the supervision of AUST Karonis, stole $465,000 from the bankruptcy estate in the course of that proceeding. Foistner's resulting criminal complaints against the Notingers

and Karonis to the U.S. Attorney's Office in New Hampshire and
other law enforcement agencies went unheeded.

After Foistner filed for bankruptcy protection in 2017,
Dahar, who was appointed as Chapter 7 trustee, allegedly
squandered the estate's assets.  In the meantime, AUST Karonis
permitted the Notingers and Attorney Laboe to participate in the
bankruptcy proceedings, apparently as representatives of
Foistner's creditors.  Laboe purportedly used that opportunity
to spread "lies" about Foistner's tax filings and loan
applications, using documents that Foistner maintains are either
protected by the attorney-client privilege or forgeries made by
Shelzi.  Laboe then allegedly passed those same documents onto
AUSA Kinsella, who began investigating Foistner.

Shortly before his indictment, Foistner filed another
criminal complaint against AUST Karonis, which he claims the
U.S. Attorney's Office declined to investigate.  He also
delivered over 500 documents to AUSA Kinsella that Foistner
believes contain exculpatory information, including IRS audit
letters and other tax records showing that Foistner correctly
reported his income on federal tax filings over a period of
sixteen years.  Foistner claims that AUSA Kinsella did not
provide those documents to the grand jury and instead used
documents that he had illegally obtained from Attorney Laboe.
According to Foistner, Kinsella became the "Manager" of the

criminal conspiracy against him, "employed by Laboe" and others
to "destroy" Foistner.  Doc. No. 63 at 2, 21.

## II.  <u>STANDARD OF REVIEW</u>

Foistner's motion does not cite the rule under which he is
moving, but I assume it is Federal Rule of Criminal Procedure
12(b), which provides that "[a] party may raise by pretrial
motion any defense, objection, or request that the court can
determine without a trial on the merits."  With respect to
Foistner's claims of prosecutorial misconduct and vindictive
prosecution, the applicable rule is Rule 12(b)(3)(A), which
allows a defendant to make a motion alleging "a defect in
instituting the prosecution," including "selective or vindictive
prosecution."  Fed. R. Crim. P. 12(b)(3)(A).  His claim that
certain counts of the indictment are defective invokes Rule
12(b)(3)(B), which provides for pretrial motions alleging "a
defect in the indictment," including "lack of specificity" and
"failure to state an offense."  Fed. R. Crim. P. 12(b)(3)(B).

When considering a motion to dismiss an indictment, the
court must accept the allegations in the indictment as true and
construe all facts in the light most favorable to the
government.  United States v. Young, 694 F. Supp. 2d 25, 27 (D.
Me. 2010); see Boyce Motor Lines, Inc. v. United States, 342
U.S. 337, 343 n.16 (1952).  "A court should exercise its

authority to dismiss cautiously, since to dismiss an indictment
'directly encroaches upon the fundamental role of the grand
jury.'" United States v. Thomas, 519 F. Supp. 2d 141, 143-44
(D. Me. 2007) (quoting Whitehouse v. U.S. Dist. Court, 53 F.3d
1349, 1360 (1st Cir. 1995)).

A Rule 12(b) motion alleging a defect in an indictment does
not "provide[] an occasion to force the government to defend the
sufficiency of its evidence to be marshalled in support of
proving the charged offense." United States v. Rodríguez-
Rivera, 918 F.3d 32, 35 (1st Cir. 2019). "[T]he question is not
whether the government has presented enough evidence to support
the charge, but solely whether the allegations in the indictment
are sufficient to apprise the defendant of the charged offense."
United States v. Stepanets, 879 F.3d 367, 372 (1st Cir. 2018)
(internal quotation marks omitted).

### III. __ANALYSIS__

Foistner seeks dismissal of the indictment in its entirety
on two grounds: prosecutorial misconduct before the grand jury
and vindictive prosecution. He also argues that the indictment
is defective with respect to the bank fraud counts. I examine
these arguments in turn and conclude that they have no merit.

### A.   __Prosecutorial Misconduct__

Foistner argues that prosecutorial misconduct resulted in
material misrepresentations and omissions in the evidence

presented to the grand jury.  Specifically, Foistner faults AUSA
Kinsella for allegedly relying upon illegally obtained evidence
from Attorney Laboe and failing to disclose to the grand jury
evidence that Foistner considers exculpatory.  The omitted
evidence included IRS audit letters showing that Foistner's tax
filings for the relevant time period were accepted by the IRS
without changes, as well as Foistner's criminal complaints
against AUST Karonis and others concerning the theft of assets
from the bankruptcy estate of his entity JFL Enterprises.

Dismissal of an indictment for prosecutorial misconduct is
an extraordinary remedy.  United States v. Laboy, 909 F.2d 581,
585 (1st Cir. 1990).  It is "appropriate only in cases of
'serious and blatant prosecutorial misconduct that distorts the
integrity of the judicial process.'"  United States v. Font-
Ramírez, 944 F.2d 42, 46 (1st Cir. 1991) (quoting United States
v. Giorgi, 840 F.2d 1022, 1030 (1st Cir. 1988)).  To succeed on
a motion to dismiss an indictment on this basis, the defendant
must first show that prosecutorial misconduct occurred.  Bank of
Nova Scotia v. United States, 487 U.S. 250, 260-61 (1988).  If
that showing is made, the defendant must then establish "that
the violation substantially influenced the grand jury's decision
to indict, or [that] there is grave doubt that the decision to
indict was free from the substantial influence of such
violations."  Id. at 256 (internal quotation marks omitted).

This "standard of prejudice is a high one." In re United States, 441 F.3d 44, 60 (1st Cir. 2006).

Foistner argues that AUSA Kinsella's failure to present exculpatory evidence to the grand jury amounts to prosecutorial misconduct warranting dismissal of the indictment.  This argument runs headlong into Supreme Court precedent.  In United States v. Williams, the Supreme Court held that a court has no authority to dismiss an indictment on the ground that the government failed to disclose to the grand jury "substantial exculpatory evidence" in its possession.  See 504 U.S. 36, 37-38, 45-47 (1992).  In that case, the Tenth Circuit had affirmed the district court's dismissal of an indictment because the prosecutor failed to present to the grand jury substantial exculpatory evidence of which he was personally aware, in violation of a Tenth Circuit rule requiring such disclosure. See id. at 39.  The Supreme Court reversed, holding that the district court had improperly used its supervisory judicial powers.  The Court reasoned that a court may use its judicial authority to dismiss an indictment for prosecutorial misconduct before the grand jury only "where that misconduct amounts to a violation of one of those few, clear rules which were carefully drafted and approved by this Court and by Congress to ensure the integrity of the grand jury's functions." Id. at 46 (internal quotation marks omitted).  A requirement to disclose exculpatory

evidence to the grand jury was not one of those rules.  See id. at 46-47.

Central to the Court's analysis in Williams was the grand jury's unique role in our constitutional system.  The Court described the grand jury as "a constitutional fixture in its own right" that "belongs to no branch of the institutional Government."  Id. at 47 (internal quotation marks omitted). Because it functions independently of the judiciary, courts may not invoke their supervisory power to reshape "the grand jury institution, substantially altering the traditional relationships between the prosecutor, the constituting court, and the grand jury itself."  Id. at 50.  The Supreme Court explained that a grand jury is not convened to assess guilt or innocence but only to determine whether criminal proceedings should be instituted.  Id. at 51.  Because "neither in this country nor in England has the suspect under investigation by the grand jury ever been thought to have a right to testify or to have exculpatory evidence presented," the Court reasoned that "[i]mposing upon the prosecutor a legal obligation to present exculpatory evidence in his possession would be incompatible with this system."  Id. at 52.

Foistner relies on an excerpt from an internal manual for Department of Justice ("DOJ") prosecutors known as the "Justice Manual" to argue that the Williams case was "overruled" by a DOJ

10

policy requiring a prosecutor to disclose to the grand jury when
he is "personally aware of substantial evidence that directly
negates the guilt of a subject of the investigation."  Justice
Manual, § 9-11.233.  This argument suffers from at least two
fatal defects.

First, the Supreme Court in Williams paid no heed to a
virtually identical DOJ policy.  See 504 U.S. at 69-70 (Stevens,
J., dissenting) (quoting U.S. Attorneys' Manual, ¶ 9-11.233 at
88 (1988)).  As the Seventh Circuit observed, "[t]he government
in Williams had failed to present the exculpatory evidence
despite an internal Department of Justice policy, similar to
that at issue here, requiring it to do so."  United States v.
Gillespie, 974 F.2d 796, 800 (7th Cir. 1992).  Regardless of
that policy, the Supreme Court held that a prosecutor's failure
to present exculpatory evidence to the grand jury will not cause
an indictment to be dismissed.  See Williams, 504 U.S. at 51-52.

Second, the Justice Manual provides internal DOJ guidance
to prosecutors that can neither overrule Supreme Court precedent
nor confer substantive rights on criminal defendants.  See
United States v. Lopez-Matias, 522 F.3d 150, 155-56 (1st Cir.
2008) (holding that the U.S. Attorneys' Manual, predecessor to
the Justice Manual, did not give rise to substantive rights and
that its violation was insufficient to give rise to sanctions).
Numerous courts have rejected attempts to circumvent Williams

based on alleged violations of the Justice Manual.  See United States v. Gross, 40 F. App'x 397, 398 (9th Cir. 2002) (holding that failure to disclose exculpatory evidence to the grand jury was not a basis to dismiss the indictment because defendant "had no constitutional right to have exculpatory evidence presented to the grand jury, and the U.S. Attorney's Manual did not create enforceable rights") (citations omitted); United States v. Myers, 123 F.3d 350, 355-56 (6th Cir. 1997) (holding that prosecutor's failure to follow the U.S. Attorneys' Manual did not create a basis for suppressing grand jury testimony); Gillespie, 974 F.2d at 800-01 (same).  Indeed, the Justice Manual itself notes that a failure to follow the DOJ's policy in this regard "should not result in dismissal of an indictment." § 9-11.233.  Thus, assuming, without deciding, that the evidence Foistner delivered to AUSA Kinsella was in fact exculpatory, the government's failure to follow its own internal policy on presenting such evidence to the grand jury does not justify dismissing the indictment.[3]

_____

[3] Foistner also argues that the government has failed to disclose material exculpatory evidence in violation of Brady v. Maryland, 373 U.S. 83, 87-88 (1963).  Brady material must be disclosed in a timely manner, United States v. Sepulveda, 15 F.3d 1161, 1178 (1st Cir. 1993), which, under the local rules of this district, is at least twenty-one days before trial.  See LCrR 16.1(d).  Considering that the trial is not scheduled to begin until May 2021, the government has not yet run afoul of Brady.  In any event, except in rare and extraordinary circumstances, the customary remedy for a delay in disclosing Brady material is a

Foistner's argument that the indictment should be quashed because the prosecutor presented improperly obtained documents to the grand jury fares no better. Foistner has presented no evidence that AUSA Kinsella showed the grand jury any documents he may have obtained from Attorney Laboe. The government has represented that no documents received from Attorney Laboe or Orr & Reno were before the grand jury. Because Foistner has failed to refute this representation, I must accept it as true for purposes of this motion.

Even if such evidence had been presented, however, Foistner has not established that he is entitled to the relief he seeks. To the extent Foistner argues that the Laboe documents included forgeries, there is no evidence that the government was aware they were fake or that those documents prejudiced the grand jury. See United States v. Reyes-Echevarria, 345 F.3d 1, 5 (1st Cir. 2003) (rejecting claim of prosecutorial misconduct before the grand jury for lack of prejudice where the defendant failed to establish that the challenged evidence was false and that the prosecutor knew it was false).[4]

---

continuance, not dismissal of the indictment. See United States v. Mathur, 624 F.3d 498, 506 (1st Cir. 2010).

[4] Relying on the Ninth Circuit's decision in United States v. Basurto, 497 F.2d 781 (9th Cir. 1974), Foistner also argues that the indictment violated due process because the government knew it relied on falsified evidence. Basurto held that the due process clause "is violated when a defendant has to stand trial

To the extent Foistner argues that the Laboe documents were illegally obtained, dismissal of the indictment is not an appropriate remedy.  The Supreme Court has held that "[a]n indictment returned by a legally constituted and unbiased grand jury . . ., if valid on its face, is enough to call for trial of the charge on the merits." Costello v. United States, 350 U.S. 359, 363 (1956).  "'[T]he mere fact that evidence itself is unreliable is not sufficient to require a dismissal of the indictment,' and . . . 'a challenge to the reliability or competence of the evidence presented to the grand jury' will not be heard." Williams, 504 U.S. at 54 (quoting Bank of Nova Scotia, 487 U.S. at 261).  The Supreme Court's reluctance to examine the quality or sufficiency of the evidence presented to a grand jury extends even to unconstitutionally obtained evidence.  See United States v. Calandra, 414 U.S. 338, 344–45 (1974) (stating that "an indictment valid on its face is not subject to challenge on the ground that the grand jury acted on

---

on an indictment which the government knows is based partially on perjured testimony, when the perjured testimony is material, and when jeopardy has not attached." Id. at 785.  The First Circuit had declined to endorse the Ninth Circuit's holding in Basurto on several occasions.  See United States v. Mangual-Corchado, 139 F.3d 34, 41 (1st Cir. 1998) (collecting cases).  But even if Basurto were the law in this circuit, Foistner's claim would fail because there is no evidence suggesting either that the government knew the Laboe documents were falsified or that those documents were sufficiently material to require dismissing the indictment.

the basis of . . . information obtained in violation of a
defendant's Fifth Amendment privilege against self-
incrimination") (citations omitted); United States v. Blue, 384
U.S. 251, 255 (1966) ("Our numerous precedents ordering the
exclusion of . . . illegally obtained evidence assume implicitly
that the remedy does not extend to barring the prosecution
altogether."). Accordingly, even if the grand jury examined
illegally obtained evidence, dismissing the indictment is not
warranted. If the government attempts to introduce such
evidence at trial, however, Foistner may move to suppress.

**B.   Vindictive Prosecution**

Foistner alleges that Attorney Laboe and other conspirators
hired AUSA Kinsella to bring charges against him, either as an
act of revenge or to prevent Foistner from continuing to
litigate civil cases against them. There is not a shred of
evidence in the record to support this claim.

Federal prosecutors enjoy substantial discretion in making
decisions on when to prosecute and when not to do so, and their
decisions are entitled to a presumption of regularity. United
States v. Lewis, 517 F.3d 20, 25 (1st Cir. 2008). To overcome
that presumption, a defendant alleging that he is a victim of
vindictive prosecution must either (1) produce evidence showing
actual vindictiveness, or (2) demonstrate "circumstances that
reveal a sufficient likelihood of vindictiveness to warrant a

presumption of vindictiveness." United States v. Jenkins, 537 F.3d 1, 3 (1st Cir. 2008).  "If the defendant creates a presumption of vindictiveness the burden shifts to the government to show that legitimate reasons exist for the prosecution." United States v. Lanoue, 137 F.3d 656, 664 (1st Cir. 1998).  Personal vindictiveness on the part of a prosecutor can sustain a claim of vindictive prosecution. United States v. Bourque, 541 F.2d 290, 293 (1st Cir. 1976).

Foistner has neither produced evidence of actual vindictiveness on the part of AUSA Kinsella nor demonstrated that the circumstances of his prosecution give rise to a likelihood of vindictiveness.  Whatever may be said of Foistner's complaints about the conduct of the bankruptcy trustees or Attorney Laboe, the record before me does not suggest that either AUSA Kinsella or anyone else at the U.S. Attorney's Office acted out of vindictiveness toward Foistner or participated in a conspiracy against him.  Accordingly, his vindictive prosecution claim has no merit.[5]

---

[5] Foistner also mentions, but does not develop, a claim of selective prosecution.  That claim fails because Foistner has not demonstrated that he was singled out for prosecution "while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him." United States v. Penagaricano-Soler, 911 F.2d 833, 837 (1st Cir. 1990) (internal quotation marks omitted).  Although he alludes to the government's failure to prosecute AUST Karonis and other alleged conspirators, the

C.    <u>**Defects in the Indictment**</u>

Foistner claims that the indictment is defective with respect to the bank fraud charges.  His principal argument is that the government's representation to this court that it does not intend to show at trial that Foistner lied on his federal income tax returns renders the indictment deficient with respect to its allegations of fraud.

There are two constitutional requirements for an indictment: it must set forth the elements of the offense charged in a manner that fairly alerts the defendant to what he is facing, and it must show the defendant to what extent he may plead double jeopardy in any future prosecution for the same offense.  United States v. Resendiz-Ponce, 549 U.S. 102, 108 (2007).  The Federal Rules of Criminal Procedure effect these guarantees in part through the requirement that "[t]he indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged."  Fed. R. Crim. P. 7(c)(1).  "It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute

---

crimes they allegedly committed (theft and criminal conspiracy) are not similar to the charges against Foistner.

the offense intended to be punished." Hamling v. United States,
418 U.S. 87, 117 (1974) (internal quotation marks omitted).  If
those requirements are met, then "an indictment, valid on its
face, returned by a legally constituted grand jury, calls for a
trial on the merits." United States v. Rodriguez, 738 F.2d 13,
16 (1st Cir. 1984).

     Foistner concedes that the indictment sets forth the
charged elements of bank fraud in a manner that accurately
reflects the relevant statutory language.  Compare Doc. No. 17,
with 18 U.S.C. § 1344.  He does not argue that the statutory
language fails to convey the elements of the offense clearly or
fully.  Instead, he takes issue with the indictment's allegation
that he provided "false and fraudulent information about his law
office's income production, his personal income, and his
personal finances."  Doc. No. 17 at 2.  Foistner argues that
this allegation was nullified by the government's representation
that it does not intend to show that he falsified his federal
income tax returns.  But the two are not mutually exclusive.
Even if it concedes that Foistner accurately reported his income
to the IRS, the government could still show that Foistner
mispresented his income and finances to his lenders.  For
example, the government could show, as it has argued, that
Foistner misrepresented that his law office was a cash-producing
business by failing to disclose that the notes receivable that

formed the basis of his reported income came from entities that he controlled or that he had no intention of collecting on those notes.  Simply put, the government need not establish tax fraud to prove bank fraud, and the indictment does not allege otherwise.

Foistner also argues that he could not have misrepresented his income to the banks because a bank loan officer is the only individual who can calculate income on a loan application.  This amounts to an attack on the sufficiency of the government's evidence, rather than the allegations in the indictment.  "At the indictment stage, the government need not 'show,' but merely must allege, the required elements" of the offense.  United States v. Stewart, 744 F.3d 17, 21 (1st Cir. 2014).  It has done so here.  Foistner is free to present the role of loan officers as a theory of defense at trial, but it is not a basis for dismissing the charges of bank fraud.[6]

_____

[6] The same is true with respect to Foistner's argument that the statements which form the basis of the bankruptcy fraud charges are all true and correct.  These are disputed facts to be resolved at trial.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, I deny Foistner's motion to dismiss the indictment (Doc. No. 63).

SO ORDERED.

<u>/s/ Paul Barbadoro</u>
Paul Barbadoro
United States District Judge

March 10, 2021

cc:  Joseph A. Foistner, <u>pro</u> <u>se</u>
     Richard Guerriero, Esq.
     Charles L. Rombeau, Esq.
     Kasey A. Weiland, Esq.
     John S. Davis, Esq.